[¶8.] Foote was found guilty of two counts of aggravated assault against a law enforcement officer in violation of SDCL 22-18-1.1 and SDCL 22-18-1.05. Aggravated assault occurs when "[a]ny person ... [a]ttempts to cause, or knowingly causes, bodily injury to another with a dangerous weapon[.]" SDCL 22-18-1.1(2). Foote claims the State presented insufficient evidence to prove he possessed a dangerous weapon. More specifically, he argues a Taser is not a dangerous weapon because it was not calculated or designed to cause serious bodily injury or death and it was not used in a manner that was likely to inflict death or serious bodily harm.
[¶9.] The Legislature has defined a dangerous weapon to be "any firearm, stun gun , knife, or device, instrument, material, or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to inflict death or serious bodily harm[.]" SDCL 22-1-2(10) (emphasis added). From the language of the statute any stun gun is, by definition, a dangerous weapon, and a Taser is a type of stun gun. See SDCL 22-1-2(50) (defining "Stun gun"). Therefore, contrary to Foote's argument, we need not determine whether a Taser is calculated or designed to cause serious bodily injury or death or whether Foote used the Taser in a manner that was likely to inflict death or serious bodily harm. The State presented sufficient evidence that Foote used a dangerous weapon-a stun gun.
[¶10.] Foote, however, further contends that insufficient evidence exists to establish beyond a reasonable doubt that he attempted to use the Taser to cause bodily harm to Agent Stolley or Deputy Swanson. He contends there is no evidence establishing his intent and neither Deputy Swanson nor Agent Stolley suffered serious injuries. In his view, the evidence established he merely acted in an effort to get away and avoid being arrested.
[¶11.] At trial, the State presented testimony from two witnesses regarding whether a Taser can cause serious bodily harm in the manner used by Foote. Jeffery Hill, an instructor on the "Taser platform" since 2010, explained that a person can receive an electrical shock by coming into contact with the wires after the Taser deploys and can continue to receive an electrical shock if the trigger is held continuously or depressed again. In regard to Deputy Swanson's Taser, Hill testified that it produced eighteen seconds of electrical shock after the probes deployed into the couch. In Hill's opinion, this type of continuous exposure to conductive electronic weapons could cause cardiac arrest. He also opined that a Taser deployed while *653 pointed at someone's face would "cause severe damage."
[¶12.] Don McCrea is an instructor with the Division of Criminal Investigation and is certified in the mechanics and use of a Taser. He testified that Deputy Swanson's Taser is a type of "stun gun" because "it is [a] conductive electronic weapon.... It sets up a major neurological interface, ... and people cannot operate properly, and it sends their muscles into overload and spasms and creates quite a bit of pain." He explained that depending on how the weapon is used, it can cause death. And according to McCrea, it "[m]ost certainly" can cause serious bodily injury. He further opined that pointing the Taser at someone's face and pulling the trigger "would be considered deadly force[.]"
[¶13.] Agent Stolley and Deputy Swanson also testified. According to Deputy Swanson, after Foote grabbed the Taser (although at the same time as the deputy), he pointed the barrel at the deputy's face. Deputy Swanson explained that Foote held the Taser "three or four inches away from [his] face[.]" Although Deputy Swanson grabbed the barrel and "pushed it toward the center of the couch," he was "in fear that [Foote] would figure out how to get the safety off and shoot [him] with it." Eventually the safety did deactivate and the Taser deployed causing Deputy Swanson to experience electrical shocks and become immobilized. He claimed that Foote kept pulling the trigger, which caused him to continue to be immobilized. He further claimed that once Foote obtained full control of the Taser, he pointed it at Agent Stolley's chest.
[¶14.] Agent Stolley similarly testified that once Foote had full control of the Taser, he pointed it at the agent's chest and "jabbed" him in the chest. Agent Stolley could not experience an electrical shock because of his bulletproof vest; however, Agent Stolley claimed he was not aware of that fact. He believed Foote desired to stun him. Agent Stolley also testified that he had observed Foote point the Taser at Deputy Swanson's face, but that the deputy was able to bat it away before it deployed.
[¶15.] From our review, the jury could have concluded Foote attempted to use the Taser in a manner likely to inflict serious bodily harm upon the officers. Because the State's evidence and all favorable inferences drawn therefrom support a rational theory of guilt, we affirm Foote's convictions.
[¶16.] Affirmed.
[¶17.] GILBERTSON, Chief Justice, and KERN, JENSEN, and SALTER, Justices, concur.